IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| PETE S. BRYANT, #242370, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> ) <br> WARDEN LEROY CARTLEDGE, ) <br> ) <br> Respondent. ) <br> _____) | Civil Action No. 3:09-3234-CMC -JRM <br><br> **REPORT AND RECOMMENDATION** |

Petitioner, Pete S. Bryant ("Bryant"), is an inmate at the South Carolina Department of Corrections serving a sentence of life without parole ("LWOP") for armed robbery pursuant to S.C.Code Ann. § 17-25-45[1] for armed robbery. Bryant filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received by the Court on December 21, 2009. Respondent filed a return and motion for summary judgment on April 7, 2010. Because Bryant is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on April 8, 2010 advising him of his responsibility to respond to the motion for summary judgment. Bryant filed a response on September 20, 2010.

---

[1]This section provides the enhanced sentence of LWOP for certain repeat offenders.

1

**Background and Procedural History**

The following summary of the factual background and partial procedural history is from Bryant v. State, 384 S.C. 525, 527-528, 683 S.E.2d 280, 281 (2009):

> On December 27, 1996, at approximately 1:30 p.m., while armed with a pistol, Bryant and accomplices robbed the E-Z Shop BP Station in Orangeburg County, South Carolina. The next day, December 28, around 2:00 a.m., Bryant and accomplices committed a second armed robbery of a convenience store, this time in Colleton County. On December 29, shortly before midnight, Bryant and accomplices committed a third and final armed robbery in Jasper County. In early January *528 1997, Bryant was arrested and charged with three armed robberies.
>
> Bryant pled guilty on July 8, 1997, to the armed robberies in Colleton and Jasper Counties and was sentenced to ten years in prison. On December 11, 1997, Bryant was convicted of the Orangeburg County armed robbery. The trial court sentenced Bryant to life without parole in light of its reading of sections 17-25-45 and 17-25-50 of the South Carolina Code. Trial counsel failed to challenge the court's construction of these statutes. Bryant's direct appeal was affirmed by the court of appeals. State v. Bryant, Op. No. 99-UP-654 (S.C. Ct.App. filed Dec. 21, 1999).

After Bryant's conviction was affirmed on direct appeal, the Remittitur was returned by the South Carolina Court of Appeals on January 11, 2000.

Bryant filed an application for post-conviction relief ("PCR I") which is dated October 24, 2000. (App. 237).[2] An evidentiary hearing was held on March 11, 2002. (App. 250). Bryant was represented by Willette Waring, Esquire. The PCR court filed an order of dismissal on July 5, 2002. (App. 307). A petition for writ of certiorari was filed by the South Carolina Office of Appellate Defense raising the following issue:

> Whether defense counsel was ineffective in failing to properly object to evidence that petitioner was in the Colleton County Jail when he became a suspect in the Orangeburg County Case?

---

[2]There is no filing date stamped on the copy in the Appendix. Respondent asserts that the PCR was filed on November 3, 2000. (Res.Mem., p. 3). The undersigned assumes this date is correct.

2

(App. 317).

Bryant attempted to file a *pro se* brief but it was rejected because he was represented by counsel, and the petition for writ of certiorari was denied by the South Carolina Supreme Court on December 18, 2003. (App. 330). Bryant filed a *pro se* petition for a rehearing which is not a part of the record before this Court. According to Respondent, Bryant "argued his sentence should be vacated pursuant to the then recently decided, State v. Gordon, 356 S.C. 143, 588 S.E.2d 105 (2003)." (Res.Mem., p. 6). The Supreme Court denied the petition for rehearing on January 28, 2004 "without prejudice to petitioner's right to file a successive post-conviction relief application." (App. 331). The Remittitur was also returned on January 28, 2004.

Bryant accepted the Supreme Court's invitation and filed a second PCR ("PCR II") on March 12, 2004, seeking to "vacate [his] life sentence under [S.C. Code Ann. §] 17-25-45 pursuant to State v. Gordon." (App. 333-339). A hearing was held on April 25, 2006. (App. 345). Bryant was represented by Clarissa Joyner, Esquire. The PCR court issued an order on July 12, 2006, granting the application, vacating Bryant's LWOP sentence, and remanding for resentencing.

The State appealed by filing a petition for writ of certiorari in the South Carolina Supreme Court raising the following issue:

> I. Did the post-conviction relief court err in concluding that Respondent's sentence of life without parole be vacated and the matter be remanded for resentencing when Respondent's prior predicate conviction involved a separate and distinct offense and the issue was procedurally barred?

The South Carolina Supreme Court reversed the decision in PCR II by a published opinion, Bryant v. State, *supra*. The Remittitur was returned on October 1, 2009.

## Grounds for Relief

In his present petition, Bryant asserts he is entitled to a writ of habeas corpus on the following ground:

**GROUND ONE:** The lower court erred in reversing the P.C.R. court decision that the petitioner's multiple armed robbery offenses should be treated as one offense for sentencing purposes.

Supporting Facts: Petitioner's three offenses of armed robbery took place within a 54 hour period and falls within the bounds of state law. The court's ruling reversing the PCT court's decision has a[n] adverse effect on the petitioner and is extremely prejudicial.

**GROUND TWO:** The petitioner is illegally sentenced to the provisions of the recidivist statu[t]e.

Supporting Facts: The sentence of life without parole is unlawful because the petitioner does not have prior convictions of armed robbery but that the petitioner is presently convicted of armed robbery.

**GROUND THREE:** The lower court erred in its misconstruction of statutory language and application of 17-25-50.

Supporting Facts: The lower court misconstrued statutory language and application of 17-25-50 which determines whether crimes so closely connected can be treated as one offense for sentencing purposes.

**GROUND FOUR:** The application and statutory language of S.C.Code of Law 17-25-45 Section (F) is ambiguous in its terminology of prior conviction.

Supporting Facts: The use of the term prior conviction can have dual meanings and ramifications. Prior conviction can mean the imposition of sentence and completion of sentence or it can mean that a mere conviction to place at an earlier date. And that no sentence has been imposed or served. Or the

sentence has been imposed but has not
been completed.

## Discussion

**A. Anti-Terrorism and Effective Death Penalty Act ("AEDPA") Statute of Limitations**

Respondents assert that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the Petitioner's conviction

becomes final, not at the end of collateral review. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399. A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "(A)n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted). "When a post-conviction

petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a). Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but subject to the doctrine of equitable tolling. Equitable tolling applies only in "those rare instances where–due to circumstances external to the [Petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [Petitioner]." Harris, 209 F.3d at 330. Under § 2244(d), the State bears the burden of asserting the statute of limitations. Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling. Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002). To benefit from the doctrine of equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way" preventing him from timely filing. Pace, 544 U.S. at 418. An attorney's mistake in calculating the filing date for a habeas petition relative to the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Lawrence v. Florida, 549 U.S. 327, 336-337 (2007) ("Attorney miscalculation [of a deadline] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). *See also* Harris, 209 F.3d at 331.

The South Carolina Court of Appeals affirmed Bryant's conviction on direct appeal and returned the Remittitur on January 11, 2000. Since Bryant did not seek further review by the South Carolina Supreme Court, his conviction became final on that date because he was not entitled to the ninety day period to seek review by the United States Supreme Court. Riddle v. Kemma, 523 F.3d

850 (8th Cir. 2008); Hemmerle v. Schriro, 495 F.3d 1069 (9th Cir. 2007); Pugh v. Smith, 465 F.3d 1295 (11th Cir. 2006); and Roberts v. Cockrell, 319 F.3d 690 (5th Cir. 2003). Bryant filed PCR I on November 3, 2000. At that time two hundred ninety five (295) days of untolled time had lapsed. The Remittitur in PCR I was sent on January 28, 2004. Bryant waited forty-three (43) days before filing PCR II on March 12, 2004. Respondent concedes that PCR II tolled the statute of limitations. PCR II was concluded with the return of the Remittitur on October 1, 2009. The record shows that the present case was filed on December 14, 2009, as that is the date Bryant delivered his petition to the prison mailing system. Thus, an additional seventy-four (74) days of time lapsed before Bryant filed the present petition. By these calculations, four hundred twelve (412) days of untolled time lapsed between the date Bryant's conviction became final and the present petition was filed.

On August 25, 2010, the undersigned denied Bryant's motion to engage in discovery. He sought discovery of state court records, medical records, and prison records to support his opposition to Respondent's argument that this petition violated the AEDPA statute of limitations. Leave was given for Bryant to file an affidavit as to these matters in connection with his Roseboro response. No affidavit was included. Bryant appears to argue that the statute of limitations "clock" was reset when the South Carolina Supreme Court allowed him to file a successive PCR. He offers no authority for this argument. The undersigned concludes, and Respondent concedes, that PCR II tolled the statute of limitations, but did not begin a second one-year statute of limitations. Bryant does not argue and has not shown that he is entitled to equitable tolling.

**B. Procedural Bar**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories

rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

1. **Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)(i) there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction,

it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 *et seq.* A PCR applicant is also required to state all of his grounds for relief in his application. *See*, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only

those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[3] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See* Rose v. Lundy, *supra*.

### 2. Procedural Bypass[4]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of

---

[3] In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[4] This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

11

a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4. Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty

13

of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and

prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

Respondent concedes that Bryant's claims have been properly exhausted except any claim for violation of due process based on the imprecise wording of S.C. Code Ann. § 17-25-45 (Roseboro Response, p. 7). Such a claim was never presented to the South Carolina Appellate Courts. Bryant argued in PCR II that he was entitled to relief based on statutory construction and the Supreme Court's ruling in State v. Gordon, *supra*. Bryant presented no claims of constitutional violation to the South Carolina courts. (*See* discussion below).

**C. South Carolina's Recidivist Statutory Scheme**

South Carolina has a "two strikes" scheme for recidivists who are found guilty of "most serious" offenses. S.C.Code Ann. § 17-25-45. Armed robbery is included as a most serious offense. S.C.Code Ann. § 17-25-45(C). The statute further states that "(f)or the purpose of determining a prior conviction under this section only, a prior conviction shall mean the defendant has been convicted of a most serious offense...on a separate occasion, prior to the instant adjudication." S.C.Code Ann. § 17-25-45(F). Another statute, S.C.Code Ann. § 17-25-50 states:

> In determining the number of offenses for the purpose of imposition of sentence, the court shall treat as one offense any number of offenses which have been committed at times so closely connected in point of time that they may be considered as one offense, notwithstanding under the law they constitute separate and distinct offenses.

In State v. Gordon, *supra*, the court ruled that §§ 17-25-45 and 17-25-50 must be construed together and stated that "recidivist status" cannot be "premised solely on acts which occur at times so closely connected in point of time that they may be considered as one offense." Gordon, 356 S.C. at 154. Gordon was decided while the appeal of PCR I was pending. Bryant moved for reconsideration of his PCR appeal based on Gordon. The South Carolina Supreme Court denied his

15

motion but allowed a successive PCR.

Bryant was granted relief by the circuit court in PCR II based on Gordon, and the State appealed. The South Carolina Supreme Court reversed the PCR court and Gordon, finding that "the desired policy of the Gordon majority is at odds with the unambiguous language of section 17-25-45(F)."

Bryant in essence argues that the South Carolina Supreme Court erred as a matter of statutory construction by reversing Gordon in his case. The function of this Court is to determine whether a state court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This Court does not review state court determinations or questions of state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991). The South Carolina Supreme Court is the final arbiter of the law of South Carolina. Its determination of what the law of South Carolina means is final and cannot be reviewed by the federal courts unless the interpretation by the South Carolina Supreme Court implicates, and is in conflict with, an identified right protected by the United States Constitution.

Bryant has presented only a question of state statutory interpretation. He is not entitled to relief in this Court.

## Conclusion

Based on a review of the record, it is recommended that Respondent's motion for summary

16

judgment be **granted**, and the petition **dismissed** without an evidentiary hearing.

                                                          Joseph R. McCrorey
                                                          United States Magistrate Judge

October 18, 2010
Columbia, South Carolina

                    **The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).